UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

DECISION AND ORDER
02-CR-73A

MARK CONGI,

Defendant.

---

## INTRODUCTION

Currently before the Court is the government's motion to disqualify attorney Paul Cambria, Esq., and Mr. Cambria's law firm, Lipsitz, Green, Fahringer, Roll, Salisbury & Cambria, from further representing defendant Mark Congi in this case. Defendant Congi opposes the government's motion.

For the reasons stated herein, the Court grants the government's motion.

## BACKGROUND

**A.   *Early Issues regarding Representation and Possible Conflicts***

On May 15, 2002, defendant Mark Congi and others, all of whom were officers or members of the Laborers International Union of North America, Local 91, A.F. of L.-C.I.O. ("Local 91"), located in Niagara Falls, New York, were charged by indictment with various violations of the RICO statute and the Hobbs

Act. Defendant Congi was initially represented by Carol Heckman, Esq. One of Congi's codefendants, Michael "Butch" Quarcini, was represented by Mr. Cambria.

On May 17, 2002, at the arraignment of codefendant Quarcini, the government notified the Court and counsel of the existence of potential conflicts of interest regarding Mr. Cambria. On May 29, 2002, the government itemized six distinct conflicts of which it was aware, including prior representation by Mr. Cambria and his law firm of a Local 91 representative before the grand jury; the firm's prior representation of potential government witnesses; the possibility that a representative of the firm would testify as to the payment of fees received from Local 91; the firm's long standing representation of Local 91; and the firm's representation of a union whose members were allegedly victimized by the defendants, an officer of which objected to Mr. Cambria remaining in the case. On June 10, 2002, the government moved to disqualify Mr. Cambria as Quarcini's counsel.

On June 26, 2002, the government added additional grounds to its disqualification motion, stating that Local 91 itself, through the officials then running the union, agreed that Mr. Cambria and his firm should be disqualified. Local 91 supported its position by citing confidences learned by Mr. Cambria's law firm during its representation of Local 91; Local 91's ethical practices code; the appearance of impropriety and conflicting interests in representing (either

simultaneously or successively) Local 91 and its individual members; and the firm's continuing possession of Local 91's files.

On July 16, 2002, Magistrate Judge Leslie G. Foschio denied the government's motion to disqualify, and on July 23, 2002, denied the government's motion for reconsideration. On September 30, 2002, this Court affirmed the Magistrate Judge's Decision and Order.

On April 8, 2003, Ms. Heckman withdrew as defendant Congi's attorney and was replaced by Joel Daniels, Esq.

On July 12, 2003, codefendant Quarcini died unexpectedly. On or about July 29, 2003, Mr. Cambria and his firm (which previously represented Quarcini) replaced Mr. Daniels as defendant Congi's counsel.

B.     *Possible Conflict regarding Brian Perry*

On September 13, 2004, the government filed a pleading relating to a new potential conflict of interest involving Mr. Cambria. In this submission, the government stated that Brian Perry, a former codefendant and now government witness, would testify that he met with and was interviewed by Mr. Cambria, without anyone else present, shortly after an incident on September 16, 1998, at the construction site of a Wegman's Food Market in Niagara Falls, New York

("the Wegman's incident").[1]  The government alleges that during the Wegman's incident, members of Local 91, including several of the named defendants in this case, attacked members of the tilesetters union, at the direction of defendant Congi, as part of a jurisdictional dispute over work assignments at the job site. The government further stated in its submission that Perry would testify that Mr. Cambria took notes of Perry's statements at this meeting and that Perry recalls signing some sort of statement or affidavit.  The government argued that this situation presented a potential conflict of interest on the part of Mr. Cambria because he could potentially be called to testify as a defense witness at trial regarding Perry's previous statements about the Wegman's incident.[2]

On September 22, 2004, Mr. Cambria filed a response memorandum stating that he "[did] not see a conflict."  Item No. 382.  Among other reasons, Mr. Cambria stated that he "searched his files and [had] no notes of any statements alleged to be Brian Perry's resulting from any meeting which he claims to have attended."  Id.  Mr. Cambria further stated "[i]ndeed, it has never been [my] habit

---

[1] The Wegman's incident is substantively charged in Counts 3 and 4 of the Indictment as two separate counts of Hobbs Act extortion.  The Wegman's incident is also identified as constituting two acts of racketeering within the racketeering conspiracy count charged in Count 1 of the Indictment.

As to the four defendants who have not pleaded guilty and are proceeding to trial, two of them (Congi and Paul Bellreng) are named in the substantive Wegman's extortion counts, and three of them (Congi, Bellreng, Albert Celeste) are charged in the racketeering conspiracy count.

[2] When interviewed by Mr. Cambria, Perry apparently understated or lied about both his conduct and the conduct of others at the Wegman's incident.

4

to take a statement in such circumstances, and repeated searches of [my] files [have] turned up no such affidavit." Id.

On September 29, 2004, the government provided a further memorandum regarding the potential conflict posed by Perry's allegations. The government argued that Mr. Cambria was in the position of being either a sworn or unsworn witness to Perry's statements and under either scenario, should be disqualified.

The Court held a hearing on the conflict issue on December 22, 2004, at which the government stated that it had reason to believe that after the Wegman's incident, Mr. Cambria privately interviewed not only Perry, but also additional Local 91 members who were present at the incident, including Michael Orsi, Louis Rotella, Brian Perry, Steven Markle, Anthony Cerrone, Andrew Tomascik, Mike Sanders and Larry Quarcini. The government also stated that Michael Orsi recalled Mr. Cambria taking notes at the meeting and having Orsi sign a document.

Mr. Cambria stated that although he did recall meeting with members of Local 91 following the Wegman's incident, he did not recall specifically meeting with Perry. He also stated that he recalled writing down the names of the people he interviewed, but did not recall taking any notes of what was said at the interviews. Mr. Cambria further stated that there were no written witness statements taken.

To resolve the conflict issue regarding Perry, the government offered that it would be willing to elicit from Perry during his trial testimony that, after the Wegman's incident, he met with and lied to an unnamed attorney about the incident. Based on this proposed resolution, the Court determined that no further action was necessary on the conflict issue.

**C.    *New Conflict Issues and the Discovery of Mr. Cambria's Notes***

On June 10, June 27, and July 28, 2005, respectively, codefendants Andrew Shomers, Salvatore Bertino and Dominick Dellaccio pleaded guilty. They are all now cooperating with the government and have informed the government that they too, like Perry, met with and were interviewed by Mr. Cambria following the Wegman's incident.

On August 3, 2005, the government filed a supplemental bill of particulars, which *inter alia* identified several potential government witnesses. On August 19, 2005, Mr. Cambria filed an affidavit stating that his firm had previously represented, in unrelated matters, several of the witnesses identified by the government. At proceedings held on August 19, 2005, the Court instructed the parties to discuss the possible conflict issue presented by this prior representation and to suggest to the Court a procedure for addressing the issue.

On September 1, 2005, Mr. Cambria filed an affidavit stating that the parties had discussed the issue and that the government would send a letter to all

the potential witnesses who were previously represented by Mr. Cambria's law firm, advising them of the situation and instructing them to inform the government if they had any objections to Mr. Cambria representing defendant Congi in this case. According to Mr. Cambria, the parties also agreed that a Curcio hearing should be held in order for Congi to waive his right to conflict-free counsel.

On October 4, 2005, the Court held a hearing on the conflict issue. The government stated at the hearing that all its witnesses affected by the conflict issue were willing to waive their attorney-client privilege. The Court ordered the government to obtain an affidavit from each of the witnesses indicating the waiver. The Court rescheduled the Curcio hearing for October 31, 2005.

In the meantime, however, on October 20, 2005, Mr. Cambria filed a memorandum stating that on October 7, 2005, an associate attorney in his firm, in preparing this case for trial, discovered notes made by Mr. Cambria regarding his meetings with Local 91 members following the Wegman's incident. Although Mr. Cambria had previously searched for such notes in his files, he failed to locate them as they were stored in an unmarked box in a file room located in a different section of his firm.

The notes appear to indicate that a short time after the Wegman's incident (the government estimates approximately two days, based on its information), Mr. Cambria interviewed individually eleven Local 91 members who

admitted to Mr. Cambria their presence at the incident.[3]  Among the eleven members interviewed by Mr. Cambria, five (Perry, Bertino, Shomers, Markle and Cerrone) were charged by the government in the present indictment with committing crimes related to the Wegman's incident, while another (Quarcini) was named as an unindicted coconspirator in the indictment's racketeering conspiracy count.[4]

       Mr. Cambria's notes indicate that during the course of his interviews of the Local 91 members, several of them admitted participating in the attack on members of the tilesetters union during the Wegman's incident.  His notes also indicate that five of the interviewed witnesses (Perry, Shomers, Markle, Connolly and Quarcini) told him that defendant Congi (referred to as "Mark" in the notes) was responsible for procuring their attendance at the Wegman's incident.  In addition, three of the remaining witnesses (Cerrone, Sanders and Tubinis) circumstantially implicate Congi, insofar as these witnesses apparently told Mr. Cambria that they were brought to the Wegman's incident by Lawrence Quarcini, who, in turn, acknowledged to Mr. Cambria that Congi told him to "get a few guys to show support."

---

[3]    The eleven members of Local 91 interviewed by Mr. Cambria were Brian Perry, Louis Rotella, Salvatore Bertino, Steven Markle, Robert Connolly, Mike Orisi, Anthony Cerrone, Laurence Quarcini (spelled "Corsini" in the notes), Mike Saunders and David Tubinis.

[4]    Although the government has stated that former codefendant Andrew Tomasik was also interviewed by Mr. Cambria regarding the Wegman's incident, Mr. Cambria's notes do not reflect such an interview.

D.      *Statements to Mr. Cambria by Former Codefendant Dellaccio*

In his October 20, 2005 submission, Mr. Cambria further stated that, on several occasions, when acting as Local 91's attorney, he had discussions with former codefendant Dellaccio (who, as stated, has pleaded guilty and is now cooperating with the government), during which Dellaccio, who at the time of the conduct charged in the indictment was president of Local 91, denied that he and other members of Local 91 committed any wrongdoing.[5]

E.      *Current Motion to Disqualify*

On October 28, 2005, following the discovery of Mr. Cambria's notes, the government moved to disqualify Mr. Cambria as defendant Congi's attorney. On October 31, 2005, the Court held a meeting on the conflict issue and issued a briefing schedule regarding the government's disqualification motion.  The Court also required the government to contact counsel for the other three remaining defendants (Bellreng, Celeste and Joel Cicero) to determine whether they wanted to take a position on the government's motion.  Bellreng and Cicero declined to take a position, but Celeste filed a letter, on November 7, 2005, stating that he

---

[5]      Even though Dellaccio has told the government that he too spoke to Mr. Cambria about the Wegman's incident (simultaneously with former codefendant Quarcini and defendant Congi, at the same location where the other interviews took place), there is no such conversation reflected in Mr. Cambria's notes.

does not wish to waive his right to call Mr. Cambria as a witness at trial and that disqualification of Mr. Cambria is therefore necessary under the circumstances.

On November 18, 2005, defendant Congi filed a personal letter with the Court urging the Court to allow Mr. Cambria to remain as his counsel in this case. Oral argument on the disqualification motion was held on November 22, 2005.

## **DISCUSSION**

With limited exceptions not applicable here, when an attorney is called as a sworn witness at trial, he must be disqualified as the trial attorney. See United States v. Kliti,156 F.3d 150, 156 n.8 (2d Cir. 1998) (citations omitted); N.Y. Code of Professional Responsibility DR 5-102 ("A lawyer shall not act . . . as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client[.]"). The same is true even if the attorney, although not called as a sworn witness, is in the position of being an "unsworn" witness to previous statements by another witness. The Second Circuit has explained the reasoning for this so-called "unsworn witness" rule as follows:

> If counsel were to cross-examine the witness as to [counsel's] conversations with him, argue the credibility of [the witness'] testimony to the jury, or suggest alternative interpretations of [the witness'] account of the conversation, [counsel] would place himself

10

> in the position of an unsworn witness and implicitly put his own credibility at issue.

United States v. McKeon, 738 F.2d 26, 35 (2d Cir.1984); see also United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993), cert. denied, 511 U.S. 1070 (1994). An attorney in the position of being an unsworn witness suffers from an "unavoidable conflict of interest." United States v. Iorizzo, 786 F.2d 52, 57 (2d Cir. 1986). "Standing alone, becoming an unsworn witness is a basis for disqualification." United States v. Ciak, 59 F.3d 296, 304-05 (2d Cir. 1995) (citations omitted), abrogated on other grounds, Mickens v. Taylor, 535 U.S. 162 (2002). Thus, in sum, "[w]hen faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony." Kliti, 156 F.3d at 156 (citing United States v. Dennis, 843 F.2d 652, 656 (2d Cir.1988)).

Here, at least some, if not all, of the eleven Local 91 members whom Mr. Cambria interviewed following the Wegman's incident are scheduled to be called by the government as witnesses against defendant Congi and the other remaining defendants at trial. Their testimony, and therefore their credibility, will be crucial to the jury's determination of those counts of the Indictment relating to the Wegman's incident (Counts 3 and 4) and the racketeering conspiracy count (Count 1). If these witnesses were to testify at trial inconsistently with the statements they made to Mr. Cambria, Mr. Cambria would be the only person in a

position to impeach their credibility by testifying about their prior inconsistent statements.[6]  The same is true for statements made by former codefendant Dellaccio to Mr. Cambria during the course of Mr. Cambria's representation of Local 91.  According to Mr. Cambria, Dellaccio, the former president of Local 91, consistently denied to Mr. Cambria any wrongdoing on his part and on the part of Local 91 and its members, including specifically defendant Congi.  Now, however, according to the government, Dellaccio will testify that there was, in fact, wrongdoing by Local 91 members, including defendants Congi, Celeste and Bellreng.  Again, Mr. Cambria would be the only person in a position to testify about Dellaccio's possible prior inconsistent statements.

In light of this situation, Mr. Cambria is in the position of potentially being called as a sworn witness at trial.  Defendants Bellreng and Celeste, and perhaps even defendant Congi himself, may want to call Mr. Cambria as a sworn witness to impeach the credibility of both the Local 91 members/witnesses whom Mr. Cambria interviewed after the Wegman's incident and former codefendant Dellaccio.  In fact, defendant Celeste has specifically reserved the right to call Mr. Cambria as a witness.

---

[6]   The Second Circuit has advised lawyers that they can avoid such a situation by having a third person present when the interview of a witness is conducted.  See Dennis, 843 F.2d at 656 (citations omitted).  That way, if there is a need for someone to testify as to statements made by the witness at the interview, the third person, instead of the attorney, may so testify.

In addition, the government may want to call Mr. Cambria as a witness. Mr. Cambria's testimony regarding statements made to him by the Wegman's witnesses and Dellaccio could be admissible in a variety of different ways, including as identification testimony, Fed. R. Evid. 801(d)(1)(C), testimony regarding prior consistent statements, Fed. R. Evid. 801(d)(1)(B), and testimony regarding statements by co-conspirators in furtherance of the conspiracy, Fed. R. Evid. 801(d)(2)(E).

Even if Mr. Cambria were not called as a sworn witness, he would still be in the position of being an unsworn witness regarding statements made to him by the Wegman's witnesses and Dellaccio. If Mr. Cambria were to cross-examine the witnesses as to his conversations with them, argue the credibility of their testimony to the jury, or suggest alternative interpretations of their accounts of the conversations, he would place himself in the position of an unsworn witness and implicitly put his own credibility at issue.

Because Mr. Cambria is in the position of being either a sworn or unsworn witness at trial, he must be disqualified. See Kliti, 156 F.3d at 156; Ciak, 59 F.3d at 304-05; Dennis, 843 F.2d at 656.

Even if defendant Congi were willing to waive his right to conflict-free counsel pursuant to a Curcio waiver and forgo cross-examination of the government's witnesses regarding conversations they had with Mr. Cambria, the Court would still disqualify Mr. Cambria based on the facts and circumstances

present here.[7]  As the United States Supreme Court has stated, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat v. United States, 486 U.S. 153, 160 (1988).  Accordingly, the Supreme Court has held that district courts are to be "allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses."  Id. at 163.  The Court explained its reasoning as follows:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.  It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. . . . These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.  Nor is it amiss to observe that the willingness of an attorney to obtain such waivers

---

[7] Although the Court started but never finished the Curcio hearing in this case, it will assume for purposes of the government's motion that defendant Congi would have been willing to waive his right to conflict-free counsel and proceed with his counsel of choice, Mr. Cambria.

14

>   from his clients may bear an inverse relation to the care with which
>   he conveys all the necessary information to them.

Id. at 162-63.

Here, any waiver by defendant Congi must be rejected for two reasons. First, such a waiver would not eliminate the conflict as it relates to the other parties, particularly defendants Celeste and Bellreng. These defendants and the government may still find it necessary to call Mr. Cambria as a witness at trial regarding the statements made to him by the Wegman's witnesses and by Dellaccio. In fact, defendant Celeste has expressly reserved the right to call Mr. Cambria. Put another way, the conflict present here goes beyond defendant Congi's interests only, and potentially impairs the integrity of the entire truth-finding process. Second, even when viewing the conflict as it relates to defendant Congi only, the Court finds that because the conflict is "severe"–*i.e.* "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994), the Court is obliged to disqualify Mr. Cambria. Id.

## CONCLUSION

For the reasons stated, the Court grants the government's motion to disqualify Mr. Cambria and his law firm from representing defendant Congi in this case. The parties shall appear on December 23, 2005 at 9:00 a.m. for the

15

purpose of identifying new counsel for defendant Congi.  Mr. Cambria, or his designee, shall be present at that meeting.  Prior to the meeting, in anticipation of defendant Congi requesting assigned counsel, Mr. Cambria, either personally or through a member of his firm, shall assist Congi in completing an affidavit of financial eligibility.  The affidavit shall be submitted to the Court by December 21, 2005.  The trial scheduled to begin on January 10, 2005, is hereby adjourned until further order of the Court.  Counsel for defendants Celeste, Bellreng and Cicero shall be provided with a copy of this Decision and Order, and shall be present at the meeting on December 23, 2005, at 9:00 a.m.  The time from this Decision and Order to December 23, 2005, shall be excluded for purposes of the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(8)(A) and (h)(8)(B)(iv), in order to afford defendant Congi a reasonable time to obtain new counsel.

    IT IS SO ORDERED.

                /s/ *Richard J. Arcara*
                HONORABLE RICHARD J. ARCARA
                CHIEF JUDGE
                UNITED STATES DISTRICT COURT

DATED: December   12   , 2005